UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    -v-<br><br>ROBERTO SANTIAGO,<br><br>                                   Defendant. | No. 10-cr-555-3 (RJS) |
| ROBERTO SANTIAGO,<br><br>                                   Petitioner,<br><br>    -v-<br><br>UNITED STATES OF AMERICA,<br><br>                                   Respondent. | No. 15-cv-5905 (RJS)<br><br>OPINION AND ORDER |

RICHARD J. SULLIVAN, District Judge:

Petitioner Roberto Santiago brings this petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2255, challenging the sentence imposed by the Court after Petitioner pleaded guilty to participating in a narcotics conspiracy. (10-cr-555, Doc. No. 87 ("Pet.").) For the reasons set forth below, the petition is denied.

I. BACKGROUND[1]

On December 21, 2012, a grand jury returned a superseding indictment charging Petitioner with one count of conspiracy to distribute and possess with intent to distribute one kilogram and

---

[1] Docket citations refer to the docket in Petitioner's underlying criminal case, 10-cr-555 (RJS). In ruling on the petition, the Court has considered the government's opposition brief (Doc. No. 92 ("Opp'n")), Petitioner's reply (Doc. No. 97 ("Reply")), the government's supplemental letter dated October 22, 2015 (Doc. No. 98), Petitioner's supplemental letter dated October 28, 2015 (Doc. No. 107), the superseding indictment in the underlying criminal case (Doc. No. 38), the plea agreement between Petitioner and the government (Opp'n Ex. A ("Plea Agmt.")), the transcript of Petitioner's change-of-plea hearing held on April 2, 2013 (Doc. No. 42 ("Plea Tr.")), the transcript of a

more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Doc. No. 38.) At a hearing held on April 2, 2013, pursuant to a plea agreement with the government, Petitioner pleaded guilty to the lesser-included offense of conspiracy to distribute and possess with intent to distribute 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (Plea Tr. at 37–38.) The parties' plea agreement set forth a stipulated advisory sentencing range of 168 to 210 months' imprisonment pursuant to the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") and noted that Petitioner was subject to a statutory mandatory minimum term of imprisonment of 60 months pursuant to 21 U.S.C. § 841(b)(1)(B). (Plea Agmt. at 2–3.) The parties also agreed not to seek any departures from the stipulated Guidelines range set forth in the plea agreement. (*Id.* at 3.) Finally, the plea agreement contained an appellate and collateral attack waiver, whereby Petitioner agreed that he would neither directly appeal nor challenge under 28 U.S.C. § 2255 or § 2241 any sentence within or below the stipulated Guidelines range. (*Id.* at 5.)

At the change-of-plea hearing, Petitioner was placed under oath, and the Court inquired into and was satisfied as to Petitioner's competence to plead guilty. (Plea Tr. at 2–5.) The Court asked whether Petitioner had sufficient time to discuss the plea agreement with his attorneys (*id.* at 5–6), explained the charge in the superseding indictment and confirmed that Petitioner understood it (*id.* at 15–19), reviewed the maximum penalties for the offenses to which Petitioner was pleading guilty (*id.* at 19–20), and confirmed Petitioner's understanding that he was waiving his right to appeal or otherwise challenge any sentence imposed by the Court that was less than

---

conference held on November 22, 2013 (Doc. No. 58 ("Conf. Tr.")), and the transcript of an evidentiary hearing and sentencing held on February 2, 2014 (Doc. No. 76 ("Sent'g Tr.")).

210 months' imprisonment (*id.* at 33).  At the conclusion of the proceeding, the Court determined that Petitioner understood his rights and knowingly waived them, and that his guilty plea was entered knowingly and voluntarily and was supported by an independent basis in fact for each of the elements of the offense charged in the superseding indictment.  (*Id.* at 38.)  Consequently, the Court accepted Petitioner's guilty plea and scheduled sentencing.  (*Id.*)

On November 22, 2013, the Court held what was originally intended to be a sentencing hearing.  At the hearing, however, the Court informed the parties that the offense conduct described in the presentence report appeared to call for two offense level enhancements not included in the parties' stipulated Guidelines range:  (1) a two-level firearms enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), based on firearms recovered from a heroin mill in the College Point neighborhood of Queens ("Mill-1") that was apparently used in furtherance of the conspiracy, and (2) a three- or four-level leadership enhancement (as opposed to the two-level leadership enhancement that the parties and Probation had suggested) pursuant to U.S.S.G. § 3B1.1(a), because the criminal activity involved five or more participants.  (Conf. Tr. at 9–16.)  In light of these issues, at the suggestion of the parties, the Court adjourned sentencing to January 24, 2014 and directed the parties to make additional written submissions.  (*Id.* at 15–16; Doc. No. 57.)

The parties' written submissions thereafter made clear that there were factual disputes relevant to determining the appropriateness of the enhancements identified by the Court.  Specifically, the government argued that both enhancements applied because Petitioner "was connected to, present inside of, and assisted in the operation of Mill-1," "firearms were present in Mill-1," and Petitioner "was a manager or supervisor" of an organization that included "at least 6 male individuals [who] worked in Mill-1."  (Doc. No. 60 at 2.)  Petitioner, by contrast, asserted that neither of the enhancements was appropriate because each turned on Petitioner's supposed

3

supervision of Mill-1, when in fact Santiago had "never worked in Mill-1 and he did not have any authority over any of the workers there." (Doc. No. 62 at 2.) Petitioner stated that Mill-1 "was owned and operated by" a codefendant, Sean Cruz, and that Petitioner "was merely a customer who purchased drugs from Mr. Cruz." (*Id.*) Due to the factual dispute regarding Petitioner's role at Mill-1, the Court scheduled an evidentiary hearing to occur prior to sentencing, pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979). (Doc. No. 63.)

On February 6, 2014, the Court conducted a *Fatico* hearing, at which time the government called one witness, a detective from the task force that investigated Petitioner's case, who provided a hearsay account of what two cooperating witnesses had told him about Petitioner's role as a supervisor at Mill-1. (Sent'g Tr. at 7–51.) After the government rested, Petitioner took the stand and denied having been a supervisor of Mill-1 or knowing of the existence of the two firearms that were ultimately seized at Mill-1. (*Id.* at 54–58.) Petitioner further testified that Sean Cruz and various members of Cruz's organization operated from the mill, which Cruz controlled, and that Petitioner visited Mill-1 on several occasions for the purpose of "bringing money or to pick up" heroin. (*Id.* at 54.) Furthermore, he testified that, over the course of "two or three years," he obtained heroin from Sean Cruz in "loose" batches of approximately 50 to 200 grams and then brought it back to his own heroin mill in Astoria, where he subdivided and bagged it with an employee named "Shorty," to be distributed by another employee named "Pablo." (*Id.* at 53–54, 58–59, 63–66.) Petitioner testified that he and Cruz had "talked about" Petitioner taking over control of Cruz's entire operation, but that, ultimately, "it never happened." (*Id.* at 55.)

Following the hearing, the Court found that Santiago had testified credibly when he denied having supervised or participated in the operations of Mill-1; accordingly, the Court struck from the presentence report all references to Santiago's supervision of that heroin mill. (*Id.* at 98–99.)

4

The Court thereafter concluded that Petitioner's Guidelines range was 168 to 210 months, which reflected a two-level role enhancement due to Petitioner's supervision of Pablo and Shorty – rather than a three-level enhancement for any supervision of the individuals working at Mill-1 – and no enhancement for a firearm. (*Id.* at 99–100.) After hearing from counsel and from Petitioner, the Court imposed a below-Guidelines sentence of 144 months' imprisonment, to be followed by five years of supervised release. (*Id.* at 121; *see also* Doc. No. 67.)

Petitioner thereafter appealed to the Second Circuit on the grounds that this Court (1) "erred by failing to vacate his guilty plea and dismiss his indictment *sua sponte*" after the evidence presented at the *Fatico* hearing "disproved the government's allegations that [Petitioner] participated in a large-scale heroin mill"; (2) "erred in calculating his drug quantity and in imposing a leadership enhancement, thus rendering his sentence procedurally unreasonable"; and (3) imposed a "substantively unreasonable" sentence by "fail[ing] to consider [Petitioner's] underprivileged background and lack of a prior criminal record." *United States v. Graham*, 610 F. App'x 56, 57 (2d Cir. 2015). Petitioner also argued that his counsel was ineffective for failing to raise these arguments at the time of sentencing. *Id.* On May 18, 2015, the Second Circuit issued a summary order affirming Petitioner's conviction in all respects. *Id.* at 60.[2]

On July 15, 2015, Petitioner filed the instant petition (Doc. No. 87), which was fully briefed by October 20, 2015 (Doc. No. 97). The government and Petitioner filed supplemental letters regarding the petition on October 22 and 28, 2015, respectively. (Doc. Nos. 98, 107.) Petitioner

---

[2] On October 7, 2015, after determining that Petitioner might be eligible for a sentence reduction in light of a retroactive application of a November 1, 2014 amendment to the Sentencing Guidelines that lowered the guideline sentencing range for certain categories of drug offenses, the Court issued an order directing the parties to make submissions regarding whether Petitioner's sentence should be modified; the Court also appointed counsel from the Federal Defenders to represent Petitioner in connection with the Court's consideration of the issue. (Doc. No. 94.) Ultimately, the parties agreed that Petitioner was eligible for a sentence reduction within an amended Guidelines range of 135 to 168 months, and the Court issued an order on December 1, 2015 reducing Petitioner's offense level to level 33 and reducing Petitioner's sentence to 135 months' imprisonment. (Doc. Nos. 110, 111.)

5

argues that his conviction should be vacated because his counsel below provided ineffective assistance by failing to argue that (1) Petitioner's guilty plea was not voluntary, knowing, and intelligent because Petitioner is actually innocent (Pet. at 3–5), (2) the Indictment was constructively amended (*id.* at 5–6), (3) the government suppressed and withheld *Brady* and *Giglio* material before Petitioner pled guilty (*id.* at 7–10), and (4) an aggravated role enhancement to Petitioner's sentencing guidelines was improper (*id.* at 10–11).

## II. LEGAL STANDARD

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted). A claim of ineffective assistance of counsel, however, is one permissible basis for bringing a Section 2255 petition.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). When challenging

6

the effectiveness of counsel's assistance, a party must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  A court must reject a movant's ineffective assistance of counsel claim if it fails to meet either prong. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (citing *Strickland*, 466 U.S. at 687, 690, 694, and *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011)).

With respect to *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).  "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel."  *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91).  Overall, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

With respect to the second prong under *Strickland*, a petitioner must show that counsel's deficient performance "prejudiced the defense, in the sense that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gonzalez*, 722 F.3d at 130 (citations and internal quotation marks omitted).  Thus, to satisfy this prong in the context of a guilty plea, "'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

III. DISCUSSION

The government argues that the Petition should be denied on two grounds: (1) the Petition is barred both by the Second Circuit's decision on direct appeal, under the so-called "mandate rule," and (2) Petitioner through his plea agreement waived his right to bring all but one of the claims in the petition. The Court agrees.

A. Mandate Rule

The mandate rule "bars re-litigation of issues already decided on direct appeal," including "matters expressly decided by the appellate court" as well as "issues impliedly resolved by the appellate court's mandate." *Yick Man Mui*, 614 F.3d at 53. Even claims for ineffective assistance of counsel are subject to the mandate rule. *Id.* at 57. Thus, "strategies, actions, or inactions of counsel that gave rise to an *ineffective assistance claim adjudicated on the merits* on direct appeal may not be the basis for another ineffective assistance claim in a Section 2255 proceeding." *Id.* (emphasis added). Here, all five of Petitioner's claims are barred by the mandate rule.

To begin with, Petitioner's first, second, and third grounds for claiming ineffective assistance of counsel all rest on a contention rejected by the Second Circuit on direct appeal; namely, that the Court's finding at the *Fatico* hearing that Petitioner did not run Mill-1 somehow undercuts the factual basis for Petitioner's conviction. First, Petitioner claims that his guilty plea was not voluntary, knowing, and intelligent because the supposed "factual basis underlying the indictment" – Petitioner's role at Mill-1 – was not true. (Pet. at 3–5.) Second, based on the same "factual basis" underlying the Indictment, Petitioner claims that the indictment was constructively amended because the allegations that Petitioner operated Mill-1 were proven false. (*Id.* at 5–6.) Third, Petitioner claims that the government suppressed and withheld *Brady* and *Giglio* material – in particular, evidence that Petitioner did not run Mill-1 – before Petitioner pleaded guilty. (*Id.* at 7–10.) As the Second Circuit's ruling on direct appeal made clear, however, the fact that

8

Petitioner did not run Mill-1 is beside the point, since the facts Petitioner admitted at his guilty plea were unrelated to Mill-1 and easily supported his conviction.

Specifically, the Second Circuit held that, "[u]nder plain error review or any other, the *Fatico* hearing did not undermine the district court's determination that Santiago's guilty plea to conspiring to distribute heroin was supported by an independent basis in fact" because Petitioner "admitted that he agreed with others to distribute at least 100 grams of heroin and took affirmative acts in furtherance of that conspiracy." *Graham*, 610 F. App'x at 58.  Indeed, as the Second Circuit explained, although this Court "concluded that Santiago did not participate in managing a large heroin mill run by Sean Cruz, Santiago's own testimony at the *Fatico* hearing confirmed that, throughout the period identified in the indictment, he conspired with two other individuals to run a smaller heroin mill." *Id.*  Thus, the Second Circuit held that, "[r]egardless of whether Santiago distributed heroin through Cruz's large-scale operation or through his own smaller drug ring, there is no doubt that the conduct to which he admitted is an offense that is punishable under 21 U.S.C. § 841(b)(1)(B) and encompassed within the conspiracy charged in the indictment." *Id.*  Moreover, because Petitioner raised an ineffective assistance claim on direct appeal that was "based entirely on his attorney's failure to raise the arguments . . . raise[d] on appeal," the Second Circuit also concluded that "Santiago cannot establish either that his lawyer below was deficient in failing to raise them or that the failure prejudiced him in any way." *Id.* at 60; *see also id.* ("[F]ailure to make a meritless argument does not amount to ineffective assistance.'" (quoting *United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008))).  These conclusions preclude Petitioner's first, second, and third grounds for relief, which attempt to collaterally attack Petitioner's conviction based on the rejected notion that, without proof that he ran Mill-1, his conviction lacked factual support.

9

Turning to Petitioner's fourth and final ground for arguing ineffective assistance of counsel – that his attorneys failed to challenge the aggravated role enhancement the Court applied at sentencing (Pet. at 10–11) – that claim was also rejected by the Second Circuit on direct appeal. Specifically, the Second Circuit held that "the district court did not err by adopting the two-level leadership enhancement under U.S.S.G. § 3B1.1(c), as recommended by the presentencing report and stipulated by both parties," because Petitioner's "own testimony confirmed that he supervised two lower-ranked employees in connection with his heroin distribution activities," which "was sufficient to establish that Santiago was 'an organizer, leader, manager, or supervisor in any criminal activity' for the purposes of a two-level enhancement under § 3B1.1(c)." *Graham*, 610 F. App'x at 59. In so ruling, the Second Circuit explicitly rejected Petitioner's argument that the enhancement was improper simply because "the *Fatico* hearing disproved the government's allegation that he played any supervisory role in" Mill-1. *Id.* And as it did with respect to Petitioner's arguments discussed above, the Second Circuit held that Petitioner could not establish that his lawyer "was deficient in failing to raise" this meritless argument "or that the failure prejudiced him in any way." *Id.* at 60.

For the foregoing reasons, the grounds for the petition are barred by the Second Circuit's ruling on direct appeal since they all rest on "matters expressly decided by the appellate court" or "issues impliedly resolved by the appellate court's mandate." *Yick Man Mui*, 614 F.3d at 53.

### B. Petitioner's Remaining Arguments Have Been Waived or Lack Merit

As an alternative basis for denying the petition, the Court finds that Petitioner has also waived through his plea agreement all but one of his arguments for vacatur, and that the remaining argument fails on the merits. A waiver of the right to appeal a sentence within an agreed upon guideline range is presumptively valid and enforceable. *See, e.g.*, *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010); *United States v. Pearson*, 570 F.3d 480, 485 (2d Cir. 2009). Thus,

"[w]here the record clearly demonstrates that the defendant's waiver . . . was knowing and voluntary, that waiver is enforceable." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004); *see also United States v. Roque*, 421 F.3d 118, 121–24 (2d Cir. 2005). However, "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195–96 (2d Cir. 2002) (citation omitted). A court may therefore set aside a waiver where the "defendant is challenging the constitutionality of the process by which he waived those rights," *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001), including when "the defendant claims that the plea agreement was entered into without effective assistance of counsel," *id.* at 113–14 (collecting cases).

    Here, the Court remains satisfied that Petitioner's waiver was knowing and voluntary in light of the Court's detailed colloquy with Petitioner at the April 2, 2013 plea hearing, during which the Court ensured Petitioner's competence to plead guilty (*see* Plea Tr. at 2–5) and specifically discussed with Petitioner the effect of the waiver (*see id.* at 33 (Court: "There is another feature in this agreement that says if I were to sentence you to 210 months or anything less than 210 months, you would give up your right to appeal that sentence or otherwise challenge the sentence. Do you understand that?" Petitioner: "Yes, sir.")). Petitioner nevertheless argues that the waiver is invalid because Petitioner entered the plea agreement due to ineffective assistance of counsel. In support of that argument, however, Petitioner merely restates the grounds on which he is seeking vacatur; he does not contend that his counsel failed to advise him of the terms of the waiver or the consequences of agreeing to the waiver. (*See* Reply at 1–2.) Nor would he have any basis for making such a contention, since during the change-of-plea hearing the Court inquired whether, and Petitioner confirmed under oath that, he had had sufficient time to discuss the plea

11

agreement with his attorney (*id.* at 5–6), that he understood the charges against him and possible defenses (*id.* at 6–7), and that he was satisfied with his counsel's representation (*id.* at 7). Petitioner also confirmed that he had discussed with counsel the rights he would be waiving by pleading guilty, that he had had enough time to discuss those rights with counsel, that he had had the opportunity to ask any questions of his counsel, and that his counsel had been able to answer those questions satisfactorily. (*Id.*) And as noted above, the Court independently advised Plaintiff of the effect of the waiver. (*Id.* at 33.)

Accordingly, the Court finds that Petitioner has alleged nothing about counsel's conduct that fell below an objective standard of reasonableness, and has also failed to demonstrate prejudice since the Court itself apprised Petitioner of his various rights and explained how a guilty plea would affect those rights. Thus, because Petitioner has met neither prong under *Strickland*, the Court rejects Petitioner's argument that he agreed to the waiver due to ineffective assistance of counsel, *see Gonzalez*, 722 F.3d at 130, and finds that Petitioner has waived all of his claims except his *Brady* claim, which the government concedes is not covered by the terms of the waiver (*see* Opp'n at 17; Plea Agmt. at 5).

The *Brady* claim fails on the merits, however. The Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), proscribes the withholding of "evidence favorable to an accused that is material to guilt or to punishment." *Cone v. Bell*, 556 U.S. 449, 451 (2009). In its summary order on direct appeal in this case, the Second Circuit made clear why no *Brady* violation occurred here, stating, "Santiago's own testimony at the *Fatico* hearing confirmed that, throughout the period identified in the indictment, he conspired with two other individuals to run a smaller heroin mill," which is clearly "an offense that is punishable under 21 U.S.C. § 841(b)(1)(B) and encompassed within the conspiracy charged in the indictment." *Graham*, 610 F. App'x at 58. Thus, the fact that the government could not prove that Petitioner engaged in other conduct that

would have similarly supported a conviction under the conspiracy charged in the indictment is irrelevant for the purpose of upholding Petitioner's conviction. *See id.* Put another way, the mere fact that Petitioner did not control Mill-1 did not amount to exculpatory evidence with respect to the conspiracy to which Petitioner pleaded guilty. Accordingly, Petitioner's *Brady* argument must also be rejected.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has failed to establish his entitlement to habeas relief pursuant to 28 U.S.C. § 2255. Accordingly, IT IS HEREBY ORDERED THAT the Petition is denied. In addition, because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Clerk of the Court is respectfully directed to mail a copy of this Opinion and Order to Petitioner, to terminate the motion pending at docket number 87 in case number 10-cr-555 (RJS), and to close case number 15-cv-5905.

SO ORDERED.

Dated: January 26, 2017
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/26/17